366 So.2d 433 (1978)
THE FLORIDA BAR, Complainant,
v.
George J. BLAHA, Respondent.
No. 53999.
Supreme Court of Florida.
December 21, 1978.
*434 George A. Stelogeannis, Bar Counsel, Ocala, David G. McGunegle and John A. Boggs, Asst. Staff Counsels, Tallahassee, for complainant.
No appearance for respondent.
PER CURIAM.
This disciplinary proceeding against George J. Blaha, a member of The Florida Bar, is before us on complaint of The Florida Bar and Report of Referee. The referee's report and record were duly filed with this Court pursuant to Florida Bar Integration Rule, Article XI, Rule 11.06(9)(b). No petition for review has been filed. On September 7, 1978, this Court entered an order directing the parties to submit briefs on the suitability of the referee's recommended disciplinary action. Respondent Blaha has failed to comply with this order.
The findings of fact and the recommendations of the referee are as follows:
II. Finding of Fact as to Each Item of Misconduct of which the Respondent is charged: After considering all the pleadings and evidence before me, pertinent portions of which are commented upon below, I find:

As to COUNT I

5B-75-8
By clear and convincing evidence Respondent George J. Blaha:
1. Was at all times relevant thereto a member of The Florida Bar and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. The Florida Bar had standing to file the Complaint and all conditions prerequisite to the filing of said Complaint, required by the Integration Rule, were fulfilled.
3. On a date prior to August 28, 1974, Respondent was retained by Angeline Dobak to assist her in establishing a guardianship for her husband, George Dobak, whom she believed to be incompetent.
4. On August 28, 1974, Respondent represented by letter to Angeline Dobak that the guardianship for her husband had been established and approved by the court when, in fact, nothing had ever been filed or approved.
5. On or about October 11, 1974, a contract for sale of property jointly owned by Angeline and George Dobak was executed by Angeline Dobak in her own behalf and as legal guardian for George Dobak.
6. On October 15, 1974, Respondent wrote to Angeline Dobak requesting information about George Dobak which would have been necessary for establishment of his guardianship which Respondent had represented had been completed prior to August 28, 1974.
7. On October 16, 1974, pursuant to the above stated contract of sale, Angeline Dobak wrote the real estate broker in the transaction, informing broker that Respondent *435 would represent the Dobaks in the transaction and that Angeline Dobak was George Dobak's legal guardian in Florida and that Respondent could confirm the guardianship.
8. On October 20, 1974, Angeline Dobak responded to Respondent's letter to her of October 15, 1974, with the requested information, and asked that Respondent forward to her a copy of the court order establishing the guardianship for George Dobak.
9. An escrow closing was held on October 30, 1974, wherein the purchase proceeds were placed in Respondent's escrow account.
10. On October 30, 1974, Respondent sent to Angeline Dobak a guardian's deed for the sale which she was to execute for herself and in behalf of George Dobak as his legal guardian when, in fact, the guardianship for George Dobak has never been established.
11. On or about November 5, 1974, Respondent transmitted his check in the amount of $1,250.00 to Mrs. Elizabeth Tucker, Strout's Realty, U.S. Highway 41 South, Brooksville, Florida, as a real estate commission despite the fact that the transaction had not been finalized.
12. After considerable delay, Respondent discovered he could not establish the guardianship for George Dobak which he had previously represented to Angeline Dobak that he had in fact established.
13. After complaints from Angeline Dobak and further delays, Respondent on or about February 9, 1975, did send to Angeline Dobak another deed  this time a warranty deed  with instructions that both she and George Dobak execute the deed in their own behalf, despite the fact that George Dobak's competency to handle his own affairs was in serious doubt and that Respondent was aware of same.
14. This warranty deed was executed by both Angeline and George Dobak on or about February 10, 1975, and returned to Respondent, yet said warranty deed was not recorded until March 7, 1975.
15. No proceeds from the transaction were transmitted by the Respondent to the Dobaks until March 31, 1975,  some five months after the escrow closing and receipt by Respondent of the sale proceeds.
16. On or about March 31, 1975, Respondent transmitted to Angeline Dobak a check in the amount of the sale proceeds ($19,662.25) due the Dobaks, payable solely to Angeline Dobak, despite the fact that George Dobak had been a joint owner of the sale property and Respondent well knew that no guardianship had been established for him.
17. By reason of the foregoing findings, I find that Respondent George J. Blaha has violated Disciplinary Rules 1-102(A)(4); 1-102(A)(6), 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 7-101(A)(2), 7-101(A)(3) and 9-102(B)(4) of the Code of Professional Responsibility and Rules 11.02(3)(a) and 11.02(4) of Article XI of The Florida Bar's Integration Rule. (Referee finds there was a typographical error in paragraph 19 of the Complaint in alleging that Disciplinary Rule 9-101(B)(4) had been violated when in fact no such Rule number exists and that said typographical error was cured by the service of the Request for Admissions on Respondent with the correct Rule number 9-102(B)(4), no response to said Request for Admissions having been timely filed by Respondent.)

As to COUNT II

5B-76-3
By clear and convincing evidence Respondent George J. Blaha:
1. Was at all times relevant thereto a member of The Florida Bar and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. The Florida Bar had standing to file this Complaint and all conditions prerequisite to the filing of said Complaint, required by the Integration Rule, were duly fulfilled.
3. On or about April 24, 1974, Respondent was retained by one Gloria Palmer to assist her in securing the return to her of certain personal property from her ex-husband *436 as ordered by the final judgment in her dissolution of marriage.
4. At the time he was retained by Gloria Palmer, Respondent accepted from her a payment of $100.00.
5. On October 10, 1975, Respondent represented to Gloria Palmer that a suit had been filed against her husband in her behalf on April 1, 1974, when, in fact, it was not filed until October 7, 1974.
6. Instead of following the correct procedure of petitioning the circuit court for relief or filing a motion for an order of contempt with the circuit court pursuant to the final judgment of dissolution of marriage, Respondent filed a complaint against Gloria Palmer's ex-husband Walter England in county court, which complaint as prepared by Respondent failed to state a cause of action recognized by law and evidenced lack of knowledge and failure by Respondent to educate himself in the matter. This complaint was dismissed by the County Court of Hernando County on the basis that it sought inappropriate relief.
7. Respondent failed to take further action to obtain relief for Gloria Palmer in the matter.
8. By reason of the foregoing paragraphs 1 through 7, I find Respondent has violated Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(1), 6-101(A)(2), 6-101(A)(3) and 7-101(A)(2) of The Florida Bar Code of Professional Responsibility and Rule 11.02(3)(a) of Article XI of The Florida Bar's Integration Rule.

As to COUNT III

5B-76-6
By clear and convincing evidence Respondent George J. Blaha:
1. Was at all times relevant thereto a member of The Florida Bar and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. The Florida Bar had standing to file this Complaint and all conditions prerequisite to the filing of said Complaint, required by the Integration Rule, were fulfilled.
3. During September, 1974, Respondent was hired by Gateway Furniture, Inc. (hereinafter referred to as "Gateway"), to represent it in a matter concerning apparent delinquent payments on furniture purchased on an open account from Gateway by Don Koenig and Renette Koenig, his wife.
4. Shortly before September 17, 1974, Respondent filed an action for replevin of the above mentioned furniture in the Circuit Court of Citrus County, Florida, against the Koenigs on behalf of Gateway.
5. On or before the date Respondent filed the replevin action against the Koenigs, Respondent knew that the furniture involved had been sold on open account and that Gateway had perfected no security interest in the furniture which would support a replevin action.
6. Prior to filing the above stated replevin action against the Koenigs, Respondent knew that Florida Statute Chapter 78 relating to replevin procedures had been altered significantly, and on that date, pursuant to Florida Statute Section 78.045 and 78.067, required a hearing and an order of a circuit court judge before a writ of replevin could be obtained from the clerk of court. Nevertheless, on or after September 17, 1974, Respondent obtained from the Clerk of Circuit Court of Citrus County, without prior hearing and judicial approval, a writ of replevin and shortly thereafter caused Gateway to remove the furniture from the Koenigs' home against the Koenigs' will.
7. On September 18, 1974, the above stated writ of replevin was quashed by order of Judge John W. Booth of the Circuit Court of Citrus County, as being in contravention of the new Florida replevin statutes, and Respondent was ordered by Judge Booth to file appropriate pleadings to obtain a writ of replevin. Respondent informed Thomas Eagan, the president of Gateway, of Judge Booth's order of September 18, 1974, but advised Eagan that Gateway need not return the furniture to the Koenigs and that Respondent would initiate curative proceedings.
*437 8. On October 9, 1974, Respondent filed a motion for default in the original replevin action against the Koenigs with the Circuit Court of Citrus County, and the clerk of court entered default on the same date.
9. On or shortly after October 9, 1974, Respondent obtained from Judge Ernest C. Aulls, Jr., of the Circuit Court of Citrus County, a final judgment in favor of Gateway in the replevin action against the Koenigs, without informing Judge Aulls of Judge Booth's order of September 18, 1974.
10. On March 11, 1975, Judge Aulls granted the Koenigs' motion to vacate the final judgment he had previously entered in the replevin action brought by Gateway, upon learning of Judge Booth's order of September 18, 1974.
11. Also, on March 11, 1975, Judge Aulls ordered Gateway to refrain from selling or otherwise disposing of the furniture taken by Gateway from the Koenigs' home.
12. Respondent did not inform Gateway of the orders issued by Judge Aulls on March 11, 1975, and between March 11, 1975, and May 2, 1975, Gateway sold all of the furniture taken by it from the Koenigs' home.
13. On May 2, 1975, Judge Aulls ordered Gateway to return to the Koenigs, within 10 days of his order, all of the furniture Gateway had removed from the Koenigs' home.
14. Respondent did not inform Gateway of the order issued by Judge Aulls on May 2, 1975.
15. On May 7, 1975, Judge Aulls amended his previous order of May 2, 1975, but again ordered Gateway to return to the Koenigs, within 10 days of his amended order, all of the furniture taken by Gateway from the Koenigs' home.
16. Respondent did not inform Gateway of the amended order issued by Judge Aulls on May 7, 1975.
17. On June 17, 1975, Judge Aulls issued an order adjudging Gateway to be in contempt of court for failure to comply with his amended order of May 7, 1975, and gave Gateway 30 days in which to purge the contempt by replacing the furniture removed by Gateway from the Koenigs' home.
18. Gateway was not informed by Respondent of Judge Aulls' order of June 17, 1975, until well after the 30-day purging period provided for in the order, when Thomas Eagan, vice-president of Gateway, inadvertently discovered the June 17, 1975, order in Respondent's file while visiting Respondent's office.
19. On August 29, 1975, a hearing was held before Judge Aulls wherein Gateway was penalized $3,000.00 for contempt of court for failure to comply with Judge Aulls' previous orders.
20. By reason of the foregoing paragraphs 1 through 19, Respondent violated Rules 11.02(3)(a) and 11.02(4) of Article XI of the Integration Rule of The Florida Bar, and Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(2), 6-101(A)(3), 7-101(A)(2), and 7-101(A)(3) of The Florida Bar Code of Professional Responsibility.
III. Recommendation as to whether or not the Respondent should be found guilty: As to each count of the complaint I make the following recommendations as to guilt or innocence:

As to COUNT I
I recommend that the Respondent be found guilty and specifically that he be found guilty of the following violations of his Oath as an attorney, the Integration Rules of The Florida Bar and Disciplinary Rules of the Code of Professional Responsibility, to-wit:
Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 7-101(A)(2), 7-101(A)(3) and 9-102(B)(4) of the Code of Professional Responsibility and Rules 11.02(3)(a) and 11.02(4) of Article XI of The Florida Bar's Integration Rule. (Referee finds there was a typographical error in paragraph 19 of the Complaint in alleging that Disciplinary Rule 9-101(B)(4) had been violated when in fact no such Rule number exists and that said typographical error was cured by the *438 service of the Request for Admissions on Respondent with the correct Rule number 9-102(B)(4), no response to said Request for Admissions having been timely filed by Respondent.)

As to COUNT II
I recommend that the Respondent be found guilty and specifically that he be found guilty of the following violations of his Oath as an attorney, the Integration Rules of The Florida Bar and Disciplinary Rules of the Code of Professional Responsibility, to-wit:
Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(1), 6-101(A)(2), 6-101(A)(3) and 7-101(A)(2) of The Florida Bar Code of Professional Responsibility and Rule 11.02(3)(a) of Article XI of The Florida Bar's Integration Rule.

As to COUNT III
I recommend that the Respondent be found guilty and specifically that he be found guilty of the following violations of his Oath as an attorney, the Integration Rules of The Florida Bar and Disciplinary Rules of the Code of Professional Responsibility, to-wit:
Rules 11.02(3)(a) and 11.02(4) of Article XI of the Integration Rule of The Florida Bar, and Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(2), 6-101(A)(3), 7-101(A)(2), and 7-101(A)(3) of The Florida Bar Code of Professional Responsibility.
IV. Recommendation as to disciplinary measures to be applied: I recommend that the Respondent be disbarred from the practice of law in Florida for the reasons as alleged in the Complaint, the seriousness of the charges, and additionally that Respondent after due notice did not appear or file any response to this Complaint, thus providing further evidence of his lack of interest or competency in the practice of law.
Having carefully reviewed the record, we find the allegations of the complaint and each count thereof to be proved by clear and convincing evidence and, therefore, we approve the findings and recommendations of the referee. See The Florida Bar v. Timson, 257 So.2d 44 (Fla. 1971); The Florida Bar v. Taylor, 201 So.2d 449 (Fla. 1967).
Accordingly, respondent, George J. Blaha, is disbarred from the practice of law in Florida. The disbarment shall be effective January 22, 1979, thereby giving respondent time to close out his practice and take the necessary steps to protect his clients, and it is ordered that respondent shall not accept any new business. The filing of a motion for rehearing shall not alter the effective date of the disbarment.
Costs in the amount of $1,510.92 are hereby assessed against the respondent.
It is so ordered.
ADKINS, Acting C.J., and OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.