697 So.2d 78 (1997)
THE FLORIDA BAR, Complainant,
v.
Howard Elliot HOROWITZ, Respondent.
Nos. 87415, 87806 and 87913.
Supreme Court of Florida.
July 10, 1997.
*79 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Lorraine C. Hoffman, Bar Counsel, Ft. Lauderdale, for Complainant.
Roger G. Stanway, Hollywood, for Respondent.
PER CURIAM.
Attorney Howard Horowitz has petitioned this Court to review a referee's recommendation that he be disbarred. We approve the referee's recommendation and disbar Horowitz. We have jurisdiction. Art. V, § 15, Fla. Const.
The Florida Bar filed three separate complaints against Horowitz in 1996, and Horowitz did not answer any of the three complaints. In cases number 87,415 and 87,806, the grievance committee determined probable cause, and the matters were referred to the referee without respondent's appearance before the committee. In case number 87,913, Horowitz appeared before the committee and waived probable cause, and the matters therein were referred to the referee. The referee found Horowitz guilty of violating numerous Rules Regulating The Florida Bar. The referee granted the Bar's motion to consolidate all three cases before the referee for final hearing. A hearing was held solely on the issue of sanctions because the referee granted the Bar's motions for default as to factual allegations. The referee recommended that Horowitz be disbarred.
In this appeal, Horowitz contends that he should not be disbarred because the referee failed to take into account the fact that he was suffering from clinical depression when the misconduct occurred. The Bar maintains that the referee did consider Horowitz' mental state before rendering his recommendation and that disbarment is warranted because the referee found respondent guilty of multiple violations of more than twenty of the Rules Regulating The Florida Bar.
The three consolidated cases involved three separate clients whom Horowitz represented. Case I (No. 87,415) involved a case in which Horowitz was paid to help a client become the legal guardian for her braindamaged child. In Case II (No. 87,806), Horowitz was retained to represent a client who was appealing a decision of the Broward County Board of Adjustment. In Case III (87,913), a general contractor retained Horowitz to collect payments due in two construction projects. In all three cases, the clients accused Horowitz of failing to perform the representation for which they had paid him.

FACTS[1]

Case I, No. 87,415 (The Starbeck Case)

Count I
Traci Starbeck is a brain-damaged individual who resides at a residential school in Fort Lauderdale known as the Ann Storck Center. Her father, Pat Starbeck, was her legal guardian until 1994. On March 3, 1994, Pat Starbeck suffered a massive heart attack which left him comatose and brain-damaged. Shortly after this event, Traci's mother, Kay Starbeck, flew to Florida from her home in Colorado and retained respondent for the purpose of obtaining guardianship of Traci. On March 11, 1994, Ms. Starbeck signed an oath of successor guardian and a petition for appointment of successor guardian. She paid Horowitz a $500 retainer fee. On July 21, 1994, Horowitz sent Ms. Starbeck a letter inquiring as to the health of Pat Starbeck. In response, Ms. Starbeck telephoned Horowitz and told him that her ex-husband had died on July 3, 1994. During the next fourteen months, Ms. Starbeck wrote several letters *80 to Horowitz requesting information on the progress of the guardianship matter and also caused the Director of Social Services at the Ann Storck Center to try to contact Horowitz. During this fourteen-month period, Horowitz failed to respond to Ms. Starbeck or administrators at the Ann Storck Center. On August 8, 1995, officials at the center sent Ms. Starbeck a letter explaining the dire consequences of having no living court-appointed guardian should Traci Starbeck need emergency treatment. Ms. Starbeck also faxed a copy of the center's letter to Horowitz. Horowitz failed to respond.

Count II
On September 22, 1995, the Bar sent Horowitz a copy of the original complaint form filed by Kay Starbeck and asked for a response thereto. Horowitz failed to respond to the Bar. On October 17, 1995, the Bar sent by certified mail another letter to Horowitz, again asking for a response to Starbeck's complaint. Again, Horowitz failed to respond.

Case II, No. 87,806 (The Burick Case)

As to All Counts
On September 20, 1993, Steve Burick retained Horowitz to appeal a decision entered by the Board of Adjustment, Code and Zoning Enforcement Division of Broward County (the Board). Mr. Burick paid Horowitz a retainer fee of $1,000.

Count I
On September 20, 1993, Horowitz filed a notice of appeal with the Board. On October 1, 1993, Horowitz filed a notice of appeal in the Seventeenth Judicial Circuit. Between October 1, 1993, and August 30, 1994, Horowitz filed no paper on behalf of Mr. Burick. On August 30, 1994, Judge Henning dismissed the case for lack of prosecution, stating that there was no activity in the case subsequent to the filing of the notice of appeal. On May 25, 1995, Mr. Burick attended a meeting of the Board; Horowitz did not attend.

Count II
After the meeting, Mr. Burick contacted Horowitz, who said that he was aware of the final order and that he had filed papers on Mr. Burick's behalf after the order was entered. Horowitz told Mr. Burick that he could come to his office on June 1, 1995, to see the paperwork. On the morning of June 1, 1995, Horowitz' secretary called Mr. Burick, at Horowitz' direction, and told him that copies of the paperwork had been mailed to him on May 31, 1995. Mr. Burick went to Horowitz' office anyway on June 1, 1995. While at the office, Mr. Burick saw his file, which had nothing in it after the 1993 notice of appeal.

Count III
Mr. Burick never received anything in the mail from Horowitz' office following the May 31, 1995, telephone call in which he was told the papers had been mailed. Horowitz failed to return Mr. Burick's telephone calls or otherwise advise him as to the true status of the matter.

Count IV
Horowitz charged a $1,000 retainer fee. He filed a notice of appeal, but did no other legal work on Mr. Burick's behalf, thereby charging a clearly excessive fee.

Count V
On July 26, 1995, a grievance committee issued a subpoena duces tecum compelling Horowitz to produce to the Bar no later than September 18, 1995, specific documents pertaining to his trust account. Despite the fact that a substantial portion of the subpoenaed materials were minimum trust accounting records as defined by Rule Regulating the Florida Bar 5-1.2(b), Horowitz produced only the canceled checks and bank statements pertaining specifically to the Burick matter.

Case III, No. 87,913 (The Bernard Case)

As to All Counts
Horowitz waived probable cause at the grievance committee hearing on this matter.

*81 Count I

MB Construction, Inc. (MB), a licensed general contractor, performed certain labor and supplied certain materials at a project known as Worldwide Construction/Orange City and at a project known as General Cinema. MB claimed not to have received certain payments which the general contractors and/or owners of such projects agreed to pay for the labor performed and the materials supplied by MB at such projects. MB retained Horowitz, who undertook MB's representation in connection with MB's stated objectives of filing mechanics' liens and collecting the amounts claimed due thereunder through appropriate foreclosure proceedings. Horowitz filed a claim of lien in the amount of $77,215.90 against the realty comprising the Worldwide Construction/Orange City project. He also filed a claim of lien in the amount of $42,742.20 against the realty comprising the General Cinema project. Horowitz neither took action to extend such liens nor commenced any proceedings to foreclose same within the applicable statutory period. As a result of Horowitz' failure to act, MP's liens against the subject projects' realty expired.

Count II
Despite his knowledge that he had permitted his client's claims of lien to expire, Horowitz did not advise his client thereof.

Count III
Despite Horowitz' knowledge that his client's hens had expired, upon inquiry by the client regarding the status of such liens and any actions commenced to enforce the same, Horowitz represented to his client as follows:
As to the remaining numbers against Worldwide, I do not have a trial date. There is no certainty as to when the trial will be set but it should be shortly due to the age of the matters.
At the time Horowitz made such representation to his client, Horowitz knew that there was to be no trial setting as represented by him. In fact, Horowitz had not commenced any actions to foreclose his client's liens and knew that such liens had expired.

Count IV
K and B Construction Inc. (KB), a licensed general contractor, performed certain labor and supplied certain materials at a project known as Bayshore Yacht and Tennis Club. KB claimed not to have received certain payments which the general contractor and/or owner of such project agreed to pay for the labor performed and the materials supplied by KB at such project. KB retained Horowitz, who undertook KB's representation in connection with KB's stated objectives of filing a mechanic's lien and collecting the amount claimed due thereunder through appropriate foreclosure proceedings. Horowitz filed a claim of lien in the amount of $21,052.50. Horowitz neither took action to extend such lien nor commenced any proceedings to foreclose the same within the applicable statutory period. As a result of Horowitz' failure to act, MB's lien against the project realty expired.

Count V
Horowitz undertook representation of KB in connection with a claim asserted by KB against a project known as Canadian Motel. Horowitz effected a settlement of KB's claim in the total amount of $9,162. Horowitz, prior to August 9, 1993, collected the settlement proceeds in the sum of $9,162. Horowitz did not notify his client of Horowitz' receipt of the settlement proceeds. Thereafter, despite numerous requests and demands by KB for an accounting and payment of its share of the settlement proceeds, Horowitz failed to remit or account to his client until April 21, 1994, after the client had filed a complaint with the Bar.

Count VI
Horowitz remitted to his client the sum of $2,949.74 and disbursed the remainder of the settlement proceeds to himself. KB, upon receipt of such $2,949.74, disputed the amount it received from Horowitz, claiming it was entitled to an additional $750. Horowitz failed to remit the disputed $750 to his client or to place the disputed amount into his trust account pending resolution of such dispute.

*82 Count VII

Upon the Bar's investigative inquiry directed to Horowitz regarding the transactions referenced in this complaint, Horowitz failed to respond in writing to such investigative inquiry despite being advised of the consequences of failing to respond to a Bar investigative inquiry.

Count VIII
Upon the Bar's subpoena duces tecum directed to Horowitz regarding the transactions referenced in this complaint, Horowitz failed to produce deposit slips, canceled checks, cash receipts, disbursement journal, ledger cards, bank statements, or other documentary support for all disbursements and transactions from the trust accounts.

Referee's Findings as to Guilt
As to all counts, the referee found Horowitz guilty of violating Rules Governing The Florida Bar 3-4.2 (a lawyer's violation of the Rules of Professional Conduct as adopted by the Rules Governing The Florida Bar is a cause for discipline) and 4-8.4(a) (a lawyer shall not violate the Rules of Professional Conduct). The referee found the following violations in Case I (The Starbeck Case): Rule 4-1.1 (a lawyer shall provide competent representation to a client); rule 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); rule 4-1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); rule 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); rule 4-1.16(d) (upon termination of representation, a lawyer shall take steps reasonably practicable to protect a client's interests); rule 3-4.8 (any member who is the subject of an investigation under the Rules Regulating the Florida Bar shall respond in writing to all investigative inquiries made by Bar counsel or grievance committees, and as elsewhere required in the Rules Regulating The Florida Bar); and rule 4-8.4(g) (a lawyer shall not fail to respond in writing to any inquiry by a disciplinary agency when such agency is conducting an investigation into the lawyer's conduct).
In Case II (The Burick Case), the referee found Horowitz guilty of violating rules 4-1.1; 4-1.2(a) (a lawyer shall abide by client's decisions concerning the objectives of representation); 4-1.3; and 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 4-1.4(a); 4-1.4(b); 4-1.16(d); and 4-1.5(a) (a lawyer shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee); 5-1.1(c) (a member of The Florida Bar shall preserve or cause to be preserved the records of all accounts or other records pertaining to the funds or property of a client or a third party maintained in compliance with rule 4-1.15 for a period of not less than six years); 5-1.1(d) (minimum trust accounting records shall be maintained and minimum trust accounting procedures must be followed by all attorneys practicing in Florida who receive or disburse trust money or property); 5-1.2(b) (minimum trust accounting records shall be maintained); 5-1.2(c) (minimum trust accounting procedures must be followed).
In Case III (The Bernard Case), the referee found Horowitz guilty of violating rules 4-1.1; 4-1.2; 4-1.3; 4-1.4(a); 4-1.4(b); 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, may constitute a cause for discipline); 4-8.4(c); 4-1.1; 4-1.2; 4-1.3; 4-1.15(b) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client; a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive, and upon request, shall promptly render a full accounting regarding such property); 4-1.15(c) (when a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property); 3-4.8; 4-8.4(g); 5-1.2(b); and 5-1.1(d).

*83 REFEREE'S RECOMMENDED DISCIPLINE

Horowitz asked the referee to consider his mental health as a mitigating factor. Regarding this information, the referee stated in his report:
Addressing respondent's mental state as suggested by the Florida Standards, he testified that he was suffering from depression brought on by being sued for malpractice by a client. This impaired his judgment when dealing with his clients or in responding to the bar's investigative inquiries. However, no evidence was submitted to substantiate these statements or to show any improvement in Respondent's psychological state.
Thus, the referee considered and rejected the mitigating factor of clinical depression. The referee found no factors in mitigation and the following aggravating factors: prior disciplinary history of a public reprimand, an admonishment, and a suspension; a pattern of misconduct; multiple offenses in which the acknowledgment of wrongdoing was very late in coming and does not seem sincere; and substantial experience in the practice of law (Horowitz was admitted to the Florida Bar in 1980). The referee found that Horowitz' neglect had caused actual and potential injury to the Starbecks, for whom the absence of a guardian could have caused serious injury in a medical emergency; to Burick, who paid Horowitz $1,000, only to have his case stalled; and to MB Construction and K and B Construction, which suffered financial harm after their mechanics' liens expired. In recommending disbarment, the referee stated in his report:
In this case, any discipline less than disbarment would not be sufficient to protect the public and would not have a deterrent effect against similar, future misconduct. It is imperative that a clear and unmistakable message be sent that callous disregard for clients, The Florida Bar, and the attorney disciplinary process are serious infractions which may not be committed with impunity.

ANALYSIS
Horowitz does not dispute the factual findings of the referee. He argues that the referee ignored mental-health evidence which he presented in mitigation to show that his misconduct does not warrant disbarment. Horowitz contends that, if given proper consideration, evidence of his depressive illness would require a lesser sanction. Horowitz contends that through observation the referee could have concluded that something was clearly wrong with Horowitz' mental state. Horowitz states through counsel that after the hearing, he attempted to supplement the record as it relates to his mental state, including physicians' and hospital reports. Horowitz contends that the reports show that his misconduct resulted from severe depression. Thus, Horowitz concludes that this Court should overturn the referee's recommendation of disbarment and impose a lesser disciplinary measure.
This Court's scope of review when reviewing a referee's recommended sanction is somewhat broader than when reviewing the referee's findings of fact because the Court ultimately has the responsibility to order an appropriate sanction. Florida Bar v. Pearce, 631 So.2d 1092, 1093 (Fla.1994). A sanction must serve three purposes: the judgment must be fair to society, be fair to the attorney, and sufficiently deter others from similar misconduct. Florida Bar v. Clement, 662 So.2d 690, 699 (Fla.1995).
There is no doubt that Horowitz' violation of numerous ethical requirements and total neglect of his clients was extreme misconduct. Furthermore, disciplinary proceedings must follow the procedural rules, and this Court can only review the record which was properly before this referee. The evidence before the referee supported the referee's determination that Horowitz' claimed clinical depression failed to sufficiently mitigate the misconduct.
Where the composite conduct of a lawyer is gross, disbarment is warranted. Florida Bar v. Setien, 530 So.2d 298, 300 (Fla.1988). In Setien, we upheld a referee's recommendation of disbarment after finding that allegations of drug and alcohol dependency, *84 for which Setien was said to be recovering, helped to explain Setien's behavior but did not excuse it. Id. In the instant case, the record reveals that the referee did consider testimony which Horowitz presented concerning his mental state. As in Setien, we find that evidence of Horowitz' clinical depression helps to explain but not to excuse his pattern of neglect of his clients and his failure to respond to communications from the Bar. As the referee found in his report, Horowitz' neglect caused significant actual and potential injury to his clients.
We specifically note that in a past disciplinary proceeding, Horowitz received an admonishment for failure to adequately communicate with his clients. He also was placed on probation and ordered to undergo a LOMAS review. Horowitz failed to timely undergo that review, and we suspended Horowitz on that basis until completion of the review. Further, in another case, we publicly reprimanded Horowitz. Florida Bar v. Horowitz, 675 So.2d 930 (Fla.1996).
We find that Horowitz' pattern of wrongdoing and his prior disciplinary history require his disbarment. In respect to Horowitz' belated attempt to present medical reports concerning his condition, we conclude that those reports were untimely and are not properly within this review. The reports may be properly considered in support of a petition for readmission pursuant to rule 3-7.10 if Horowitz seeks readmission pursuant to that rule.

CONCLUSION
Accordingly, we approve the referee's report and the recommended discipline. Attorney Howard Horowitz is to be disbarred and shall not be eligible for readmission until a period of five years has elapsed and then only upon full compliance with the rules and regulations governing admission to the Bar. The disbarment will be effective thirty days from the date of this judgment so that Horowitz can close out his practice and protect the interests of clients with current legal business pending. Horowitz shall accept no new legal business upon the filing of this opinion. The Florida Bar's costs are assessed against respondent in the amount of $1,384.35, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] These facts are taken from the referee's findings of fact.