873 So.2d 317 (2004)
THE FLORIDA BAR, Complainant,
v.
Arthur James SPRINGER, Respondent.
No. SC02-1687.
Supreme Court of Florida.
April 29, 2004.
*318 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, The Florida Bar, Tallahassee, FL; and Thomas Edward DeBerg, Assistant Staff Counsel, Tampa, FL, for Complainant.
Scott K. Tozian and Gwendolyn Hollstrom Hinkle of Smith and Tozian, P.A., Tampa, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Arthur James Springer. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, we approve the referee's factual findings and recommended discipline and hereby disbar Springer from the practice of law in Florida.

FINDINGS OF FACT AND RECOMMENDATIONS OF GUILT
The Florida Bar filed a six-count complaint against Springer. At a disciplinary hearing, The Florida Bar and Springer stipulated to detailed facts which the referee adopted as the facts of the case. Based on these facts, the referee issued a report containing the following recommendations as to each count.

COUNT I
Howard Mitchell hired Springer to defend him in a real property partition action in Georgia brought by David Centa. While Springer was involved in the case, from December 1997 to November 2000, he never filed a pro hac vice motion or a notice of appearance with the Georgia trial court; thus, Springer did not file any documents with the court during the case. Springer did communicate with the plaintiff's counsel, who informed Springer of the trial date set by the court. However, Springer did not appear at trial. The jury found in favor of the plaintiff Centa, and the court entered judgment against Mitchell. Even after the court entered judgment, when Mitchell asked about the case Springer told him "it's going to be fine." Springer prepared but did not file with the court a motion to set aside final judgment. He repeatedly lied to Mitchell, telling him that hearings had been scheduled on the motion and then postponed. Mitchell did not recover the value of his interest in the property, which he alleged was about $29,000.
On count I, the referee recommended that Springer be found guilty of violating the following Rules Regulating the Florida Bar: rule 4-1.1 (a lawyer shall provide competent representation to his client); rule 4-1.3 (an attorney shall act with reasonable diligence in the representation of his client); rule 4-1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); rule 4-5.5 (a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction); rule 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct); rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and rule 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).

COUNT II
The Camelot Condominium Owners' Association, of which Howard Mitchell was *319 president, hired Springer in 1993 to handle foreclosures of timeshare condominium units whose owners failed to pay their maintenance fees or taxes. In March 1998, Mitchell asked Springer about twenty-four foreclosure cases which had not been finalized. Springer gave Mitchell falsified copies of certificates of title to the twenty-four timeshare units, all dated April 9, 1998. Springer misrepresented to Mitchell that the twenty-four foreclosures were final. Mitchell sold some of the units to new owners, but in April 1999, Mitchell discovered that the certificates of title were not recorded and that the foreclosures were not finalized. The sales of units based on Springer's falsified certificates of title resulted in Camelot's having to resolve cases of multiple owners claiming the same unit, creating additional legal expenses and potentially harming Camelot's reputation.
On count II, the referee recommended that Springer be found guilty of violating rule 4-1.1 (competence); rule 4-1.3 (diligence); rule 4-1.4(a) (communication); rule 4-8.4(a) (violation of Rules of Professional Conduct); rule 4-8.4(c) (dishonest conduct); and rule 4-8.4(d) (conduct prejudicial to the administration of justice).

COUNT III
In December 1995, Howard Mitchell hired Springer to pursue a breach of agreement claim arising from Mitchell's sale of a house to Garland and Mary Cunningham. Springer failed to file a claim against the Cunninghams. In March 1999, Springer falsely told Mitchell that he had obtained a garnishment of Mr. Cunningham's wages. In August 1999, Mitchell learned of Springer's negligence in this and other cases, and Springer signed a letter admitting his negligence and promising diligence in the future. Despite his promises, in April 2000, Springer falsely represented to Mitchell that he was following up with Mr. Cunningham's employer to enforce a garnishment, when there was in fact no judgment to support a garnishment. In December 2000, Mitchell fired Springer and Springer withdrew from the case. In January 2001, Mitchell filed pro se a motion for default that Springer had drafted and successfully obtained a default judgment against the Cunninghams.
On count III, the referee recommended that Springer be found guilty of violating rule 4-1.1 (competence); rule 4-1.3 (diligence); rule 4-1.4(a) (communication); rule 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct); and rule 4-8.4(c) (dishonest conduct).

COUNT IV
In January 2000, Howard Mitchell hired Springer to pursue a breach of contract claim arising from the failure of Randy Baron and Jennifer Wall to pay Mitchell for construction work on their home. In February 2000, Springer filed a claim of lien, but the defendants filed a motion to dismiss because the complaint failed to allege certain elements of an oral contract. The court gave Mitchell fifteen days to respond. Springer failed to respond, and the court granted the defendants' motion to dismiss.
Over the next several months, Springer told Mitchell he was filing papers and scheduling hearings to reinstate the case, which he did not do. In October 2000, Springer filed a new complaint. Baron and Wall counterclaimed. Springer failed to answer the counterclaim, and the court entered a default judgment against Mitchell. In December 2000, Mitchell fired Springer, and Springer withdrew from the case.
On count IV, the referee recommended that Springer be found guilty of violating *320 rule 4-1.1 (competence); rule 4-1.3 (diligence); and rule 4-1.4(a) (communication).

COUNT V
In November 1997, Howard Mitchell hired Springer to file a lien against C & D Printing for failure to pay Mitchell for construction work. Over the next several months, Springer did nothing substantive on the case but told Mitchell that he had filed a complaint and that a hearing was scheduled. In August 1999, Mitchell learned of Springer's negligence in this and other cases, and Springer signed a letter admitting his negligence and promising diligence in the future.
In September 1999, Springer filed a complaint but misnamed C & D Printing as "Cee & Dee Printing." In February 2000, the clerk of court issued a notice of intent to dismiss for failure to obtain service. In May 2000, Springer lied to Mitchell, saying he had obtained a judgment and was attempting to enforce collection. In October 2000, Springer filed an amended complaint and C & D Printing filed a motion to dismiss. In January 2001, Mitchell fired Springer and Springer withdrew from the case.
On count V, the referee recommended that Springer be found guilty of violating rule 4-1.1 (competence); rule 4-1.3 (diligence); rule 4-1.4(a) (communication); and rule 4-8.4(c) (dishonest conduct).

COUNT VI
In 1998 Camelot filed a lien against timeshare unit owner Richard Baserap for failure to pay maintenance fees and taxes. In November 1998, Baserap filed suit against Camelot alleging illegal lockout and challenging the amount of the lien. Springer timely filed an answer and affirmative defenses for Camelot but then failed to comply with a court order regarding discovery. The court entered a judgment of liability in favor of Baserap. Springer settled the case for $18,000 without Camelot's consent. He paid the $18,000 from his own funds and told Camelot about the settlement after the fact.
On count VI, the referee recommended that Springer be found guilty of violating rule 4-1.2(a) (a lawyer shall abide by a client's decision whether to make or accept an offer of settlement of a matter); rule 4-1.3 (diligence); and rule 4-1.4(a) (communication).

RECOMMENDED DISCIPLINE
At the disciplinary hearing, the Bar sought to have Springer suspended from the practice of law for two years followed by a two-year probationary period and a mandatory review of his practice by the Law Office Management Assistance Service of the Florida Bar (LOMAS), as well as payment of the Bar's costs. In his final report, the referee recommended that Springer be disbarred from the practice of law and be required to pay the Bar's costs. The referee found in aggravation that Springer had committed multiple offenses and demonstrated a pattern of misconduct. The referee stated that Springer's multiple incidents of incompetent action followed by lies, then more lies to cover up the deceit, demonstrated "a defect, if not an absolute absence, of honesty, integrity, and ethical judgment." In mitigation, the referee found that Springer had a cooperative attitude during the proceedings and showed remorse. In evaluating the mitigating factors, the referee found that Springer's cooperation and remorse did not "rise to the level of a valid basis to outweigh the harm of Respondent's actions." The referee concluded that Springer "has not and cannot meet" the Bar's standards of professional and ethical responsibility, and "thus is not qualified to practice law and represent members of the public."

*321 ANALYSIS
Neither party contests the referee's findings of fact or recommendations as to guilt. Therefore, we approve the referee's findings of fact and recommendations of guilt without further discussion. Springer challenges the referee's recommended discipline, arguing that a one-year suspension rather than disbarment is the appropriate sanction. The Bar counters that disbarment is appropriate.
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
We agree with the Bar and find the referee's recommended discipline to be reasonably supported by existing standards and case law. See Fla. Stds. Imposing Law. Sancs. 4.41 (disbarment appropriate when a lawyer knowingly fails to perform services or engages in a pattern of neglect of client matters, and causes serious or potentially serious injury to a client); 4.51 (disbarment appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client); and 5.11(f) (disbarment appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice); see also Florida Bar v. Nesmith, 707 So.2d 331, 333 (Fla.1998) (stating that this Court deals more harshly with cumulative misconduct than it does with isolated acts); Florida Bar v. Benton, 157 So.2d 420 (Fla. 1963) (imposing a two-year suspension on an attorney who was hired to obtain a divorce for a client, failed to file suit, but told the client his divorce was final and gave the client a falsified divorce decree). In light of the multiple instances of misconduct involved and the nature of the misconduct in this case, we approve the referee's recommendation that Springer be disbarred.

CONCLUSION
Arthur James Springer is hereby disbarred from the practice of law in the State of Florida without leave to apply for readmission for five years. The disbarment will be effective thirty days from the filing of this opinion so that Springer can close out his practice and protect the interests of existing clients. If Springer notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Springer shall accept no new business from the date this opinion is filed until he is readmitted to the practice of law in Florida. We also enter judgment against Springer in favor of The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for costs in the amount of $3,313.12, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs with an opinion, in which BELL, J., concurs.
*322 LEWIS, J., specially concurring.
The referee below in the case before us demonstrated to the citizens of Florida, all trial and appellate courts of the state, and members of the bar the ability to protect the public against unfit attorneys and to ensure the integrity of our judicial system. This Court has now seized the opportunity to stand firmly against this type of behavior by accepting and approving the referee's disbarment recommendation. The Court has recognized the uncontroverted evidence demonstrating that Springer engaged in numerous instances of gross misconduct for the better part of a decade. There is absolutely no basis in law for this Court to reject the referee's recommendation in this case and in standing firm we have today fulfilled our duty as the body ultimately responsible for maintaining and advancing the ethical standards for lawyers practicing in this state, and delivered the firm and correct message to the bench, bar, and concerned public of Florida. The majority ably and correctly recites the applicable standard of review, acknowledging that we will not second-guess a referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). The referee's recommendation in this case is, most assuredly, firmly rooted in the guidelines for sanctioning lawyers and existing case law. Springer admits that he is guilty of five violations of rule 4-1.1 of the Rules of Professional Conduct, which requires attorneys in this state to competently represent their clients. Florida's Standards for Imposing Lawyer Sanctions provides that disbarment is the appropriate penalty in cases involving the failure to provide competent representation when "a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client."[1] Fla. Stds. Imposing Law. Sancs. 4.51 (emphasis supplied). The commentary to that section provides, "Disbarment should be imposed on lawyers who are found to have engaged in multiple instances of incompetent behavior." Fla. Stds. Imposing Law. Sancs. 4.51 (cmt.) (emphasis supplied). Cautioning that the severe sanction of disbarment should not be imposed for single instances of incompetence, the commentary further explains, "[D]isbarment should be imposed on lawyers whose course of conduct demonstrates that they cannot or will not master the knowledge and skills necessary for minimally competent practice." Id.
Disbarring Springer for his grossly incompetent representation is entirely consistent with the discipline measures outlined in the governing standards. As a result of Springer's failure to appear at trial in the Georgia partition action, Howard Mitchell was subject to a default judgment. Another default judgment resulted from Springer's failure to answer a counterclaim in the Baron/Wall matter.[2] In addition, *323 Mitchell was deprived of the benefits of swift resolution of the Cunningham matter, which Springer failed to prosecute for six years, and the claim of lien against C & D Printing, which Springer neglected to initiate for two years.[3] Most incredibly, Springer's falsification of twenty-four certificates of title to timeshare units subjected Camelot Condominium Owner's Association to protracted litigation and concomitant expense resulting from numerous competing claims of ownership.
Springer's course of conduct patently exhibits a complete lack of understanding of the most fundamental legal procedures and obligations, resulting in serious injury to his clients. The multiplicity of incidents and prolonged nature of his incompetent and intentionally wrongful conduct reveals that he either cannot or will not master the knowledge and skills necessary for minimally competent practice. Under the guidelines, disbarment is warranted on the basis of Springer's incompetent conduct alone.
Springer's culpability is not, however, limited to the miserable incompetence demonstrated here. Springer is also guilty of six violations of the rule requiring attorneys to act with reasonable diligence and promptness in representing a client. Springer admits that he lacked diligence in the incidents referenced above, as well as in an illegal lockout claim, where his failure to comply with court-ordered discovery resulted in a liability judgment against Camelot. Notably, Springer subsequently even settled the action for $18,000 without his client's consent. In sanctioning lawyers for lack of diligence, the guidelines recommend disbarment when "a lawyer knowingly fails to perform services for a client and causes injury or potentially serious injury" or where "a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." Fla. Stds. Imposing Law. Sancs. 4.41. Suspension is appropriate where "injury" as opposed to "serious injury" results. See id. at 4.42.
In my view, there is no doubt that Springer's lack of diligence resulted in "serious injury" warranting disbarment under the guidelines. All told, his failure to take timely action on behalf of his clients resulted in two default judgments, a liability judgment, substantial and unnecessary litigation expenses, and the deprivation of benefits from unprosecuted claims. The facts and circumstances of this case make it entirely clear that Springer is either unable or unwilling to perform the duties of our profession at a level of reasonable competence and diligence.
It is most telling that Springer's ethical transgressions did not, however, end with his failure to perform in a reasonably competent and diligent manner. To cover up for these failures, he resorted to misrepresentations and lies, resulting in additional breaches of the rules governing the legal profession. Springer misrepresented the status of his client's claims to disguise the fact that he had simply failed to act or had mishandled the matters. When his ineptitude or disregard was discovered by his clients, he was contrite and even signed a letter admitting his negligence and rededicating himself to act with due competence and diligence. Ultimately, however, even Springer's mea culpa was a lie. After signing that letter, he continued to perform in the same inexcusable manner as before.
Based on this pattern of avoidance and deceitfulness, the referee determined that Springer should be found guilty of six violations *324 of the rule requiring attorneys to keep their clients reasonably informed about the status of a matter, and five violations of the rule prohibiting attorneys from engaging in conduct involving fraud, deceit, or misrepresentation. Based on Springer's misconduct, the referee also found two violations of the rule proscribing violations of the Rules of Professional Conduct, two violations of the rule against engaging in conduct prejudicial to the administration of justice, one violation of the rule prohibiting the unlicensed practice of law, and one violation of the rule requiring attorneys to abide by their client's decision with regard to settlement. Springer fully admits that he is guilty of these violations and none are disputed.
As the uncontested facts demonstrate, Springer violated a multitude of rules governing the legal profession numerous times over many years, and the ill effects of his misconduct seriously injured not one, but multiple clients. Despite the shocking enormity of the misconduct of this case, and the firm basis for disbarment in the guidelines governing the sanction of lawyers, Springer asks this Court to buckle and reduce his sanction. As a basis for reduction, Springer asserts a lack of case law supporting the disbarment here. To me, this justification is meritless.
As a threshold matter, a case law void is unsurprising with regard to facts such as these. I would expect that attorneys displaying conduct as egregious as Springer's normally forfeit their bar memberships and do not have the moxie to present a request for appellate review before this Court. Moreover, the assertion that there are no factual analogs rests on an unduly conservative interpretation of the standard of review. A sanction recommendation need only be reasonably based in existing case law; it need not spring from factually identical precedent. We should not subscribe to the view that disbarment may not occur if this Court has not previously rendered an opinion of disbarment on identical facts. Facts supporting disbarment (such as those in the present case) may be so egregious that this Court has not had the occasion to render such an opinion.
In any event, I am of the opinion that there is more than ample support for the referee's recommendation in existing case law. In addition to those decisions set forth by the majority, in Florida Bar v. Blaha, 366 So.2d 433 (Fla.1978), we disbarred an attorney for mishandling three clients' cases over a one-year period. Blaha mishandled a guardianship and real estate transaction, repeatedly misrepresented the status of the case to his client, and, after the transaction was finally consummated, retained the proceeds for a period of five months. See id. at 434-35. Blaha filed another client's action in the wrong court, resulting in dismissal, and mishandled a repossession action that ultimately resulted in his client being assessed a $3000 contempt fine for reselling repossessed furniture in violation of a court order. See id. at 435-37.
Despite the striking similarities, Springer would have us ignore Blaha. Perhaps Blaha can be distinguished because the attorney in that case also failed to respond to The Florida Bar's complaint against him, whereas Springer cooperated fully in the disciplinary proceeding against him. The facts here were so obvious and egregious, he had no other choice. Given that Springer's incompetence was more extreme than Blaha's, and resulted in even more substantial injury to his clients (two default judgments, a liability judgment, tens of thousands of dollars in unnecessary legal bills, and delay of benefit in two unprosecuted claims), I do not believe that Blaha's failure to participate in the disciplinary proceeding against him, standing *325 alone, is a sufficient basis to distinguish the sanctions imposed.
In my opinion, we certainly would not have hesitated to disbar Springer had he also committed a financial infractionsuch as the failure to maintain a trust account. See, e.g., Florida Bar v. Horowitz, 697 So.2d 78, 84 (Fla.1997) (disbarring an attorney guilty, in pertinent part, of competency, candor, and diligence infractions, as well as the failure to cooperate with the disciplinary investigation, return client property, and maintain trust account and other financial records); Florida Bar v. Mitchell, 385 So.2d 96, 97 (Fla.1980) (disbarring attorney who failed to file claims, make court appearances, prosecute appeals, maintain a trust account, return monies advanced to him by his clients, and who knowingly and willfully issued a check with insufficient funds). However, in my view, the numerous, varied violations of the ethical rules committed by Springer were as serious, if not more serious, than the failure to maintain a trust account. What a perverse result it would be if an attorney could violate a panoply of rules, wreak tremendous damage on his client's interests, yet avoid the ultimate punishment by keeping his financial house in reasonable order.
More importantly, it is also my view that Springer's position fails to accommodate the repeated and prolonged nature of his conduct. Surely, had Springer been subject to disciplinary proceedings for each of his offenses as they occurred, this Court would not have continued to prescribe short-term suspensions. At some point we would have said "enough is enough," and rescinded Springer's license to practice law. He deserves no more lenient punishment because his numerous transgressions were lumped into one disciplinary proceeding.
Springer argues that a short suspension is appropriate here. The referee's recommendation of disbarment here sends the unmistakable message that an attorney is unfit to represent the citizens of the State of Florida, not just that he made serious errors, but is capable of rehabilitation. The gravity and frequency of Springer's transgressions proves beyond doubt that he is unfit to practice law in this state. His own failed attempt to correct his behavior demonstrates that he cannot or will not be rehabilitated. Thus, this Court must not hesitate to affirm the powerful message of the referee___that misconduct as egregious as that demonstrated in the instant matter will result in disbarment. The conduct of Springer cannot be more eloquently described than in the words of the referee below, the Honorable Mark I. Shames, as he stated:
Respondent harmed his clients by incompetent action, he expressly lied about it to his clients, and thereafter he continued to affirmatively lie and attempt to cover up the lies. Significant consideration must be given to the fact of multiple incidents of such conduct by the Respondent, involving several clients. There is no way to interpret the Respondent's deliberate actions in a light favorable enough to him to accept his suggestion that he meant no harm. He is not a competent lawyer. More egregious, however, is the defect he refers to as one of personality. It is more; it is a defect, if not an absolute absence of honesty, integrity, and ethical judgment. Arguably, a lawyer who has these qualities but is less competent than others should have an opportunity to raise himself to a minimum level of competence to practice law and represent clients. A lawyer without these qualities should not, regardless of competence. The Bar has an obligation to protect the public and to maintain reasonable *326 standards of professional and ethical responsibility. Mr. Springer has not and cannot meet those standards, and thus is not qualified to practice law and represent members of the public.
If this Court were weak in its resolve in a case such as this, and unwilling to affirm the imposition of sanctions befitting the misconduct, criticism of our ability to oversee attorney disciplinary proceedings would be well-founded. The lower courts and the public at large must not lose faith in the ability of the existing system to respond and react to ethical transgressions as appropriate. If we were to reject and reduce the recommended sanction in this case, we would undermine the very process which protects Florida citizens. The people of Florida are entitled to expect more from attorneys and we should demand no less. For the reasons stated herein, I fully concur with the majority's decision and opinion.
BELL, J., concurs.
NOTES
[1] By contrast, the guidelines provide that "[s]uspension is appropriate when a lawyer engages in an area of practice in which the lawyer knowingly lacks competence, and causes injury or potential injury to a client." Fla. Stds. Imposing Law. Sancs. 4.52. Here, Springer did more than just venture ill-prepared into a new area of the law. He simply totally failed to perform, or incompetently performed, the basic tasks of his profession which he accepted and agreed to complete.
[2] Like onions, the counts described in the majority opinion can be peeled to reveal numerous layers of incompetence. For instance, Mitchell's original complaint in the Baron/Wall matter was dismissed when Springer failed to respond to the defendant's motion to dismiss.
[3] When Springer finally did file the claim of lien against C & D, he misnamed the defendant nearly resulting in dismissal for failure to obtain service.